

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00121-CR

**LOUIS SHERLEY FANCHER,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2007-89-C2**

# OPINION

Billy Daniels went into a convenience store in Mart to buy a cup of coffee. Right after he arrived, Appellant Louis Fancher also entered the store to buy a cup of coffee. The two men were formerly brothers-in-law (Fancher had been married to the sister of Daniels's wife) and had known each other for over twenty years. Daniels said he did not have a problem with Fancher, but Fancher testified that their relationship was strained after he divorced Daniels's wife's sister.

Daniels had already gotten a cup of coffee. Fancher said he was preparing his

cup by first putting in sugar and cream, and when he stepped in Daniels's direction to throw away the empty packets, Daniels blocked his way. Fancher told Daniels to quit messing around with him, and Daniels asked what Fancher was going to do about it. Daniels blocked Fancher again and then also for a third time, after which Daniels's coffee splashed on Fancher. Fancher thought the splash was intentional and hit Daniels one time with his fist on the side of the head. Daniels fell to the floor unconscious. Daniels had no memory of the incident. Daniels had a preexisting spinal cord injury, and the fall caused bruising and further injury to his spinal cord. He had surgery and "hardware" was inserted into his neck, leaving it permanently stiff and impairing his ability to work and enjoy life.

The indictment charged that Fancher "did then and there intentionally, knowingly or recklessly cause serious bodily injury to BILLY DANIELS by striking him." The charge's application paragraph, which is the subject of Fancher's first issue, queried if "Fancher, did then and there intentionally, knowingly, or recklessly strike the said Billy Daniels, and caused serious bodily injury to Billy Daniels."

The jury was also charged on the lesser-included offense of assault and on self-defense. The jury found Fancher guilty of the offense of aggravated assault and assessed an eight-year prison sentence. Fancher raises two issues: (1) the charge was erroneous because it lessened the State's burden of proof, or, in the alternative, did not state the alleged offense or any offense; and (2) the evidence is legally and factually insufficient to prove *mens rea*.

**Sufficiency of the Evidence**

First we will review the sufficiency of the evidence on *mens rea*.[1] When reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

When performing a sufficiency review, we may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as

---

[1] The Court of Criminal Appeals recently overruled *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) and factual-sufficiency review. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The court held that the *Jackson v. Virginia* sufficiency standard is the only standard a reviewing court should apply in determining the sufficiency of the evidence. *Id.*

defined in a hypothetically correct jury charge for the case.[2] *Cada v. State,* --- S.W.3d ---, ---, 2011 WL 409002, at *5 (Tex. Crim. App. Feb. 9, 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The parties disagree on what is a hypothetically correct jury charge in this case. Tracking the flawed indictment, Fancher posits the following: "Do you find beyond a reasonable doubt that [Fancher] intentionally, knowingly or recklessly caused serious bodily injury to Billy Daniels by striking him[?]" The State argues that binding the hypothetically correct charge to the indictment unnecessarily increases the State's burden of proof and asserts that the hypothetically correct jury charge should read that "[Fancher] did then, and there, intentionally, knowingly, or recklessly cause bodily injury by striking the victim, which caused serious bodily injury."

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2010). A person commits aggravated assault if he commits assault as defined in section 22.01 and

---

[2] As we discuss below, Fancher asserts, and the State concedes, that the charge's application paragraph is erroneous.

the person "causes serious bodily injury to another."  *Id.* § 22.02(a)(1); *see Ferrell v. State,* 55 S.W.3d 586, 598 (Tex. Crim. App. 2001).  Aggravated assault—causing serious bodily injury is a result-oriented offense.  *Landrian v. State,* 268 S.W.3d 532, 533, 537 (Tex. Crim. App. 2008); *Johnson v. State,* 271 S.W.3d 756, 761 (Tex. App.—Waco 2008, pet. ref'd).

> The gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01.  Thus, the *actus reus* for "bodily injury" aggravated assault is "causing bodily injury."  Turning to the eighth-grade grammar test, the subject is "the defendant," the verb is "cause" and the direct object is "bodily injury."  The precise act or nature of conduct in this result-oriented offense is inconsequential.  "What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified."

> This *actus reus* must be accompanied by a culpable mental state.  In its "bodily injury" assault subsection, the legislature stated that any of three culpable mental states suffices:  intentionally, knowingly, or recklessly causing bodily injury. …

> Aggravated assault increases the penalty for simple "bodily injury" assault if the victim suffers a significantly greater degree of bodily harm— serious bodily injury, rather than mere bodily injury.

*Landrian,* 268 S.W.3d at 537 (footnotes and citations omitted).

The State's version of a hypothetically correct charge is correct.  The State is also correct that serious bodily injury is an aggravating factor and does not require a culpable mental state.  *See id.*  The indictment's heightened intended level of injury should not be applied in a hypothetically correct jury charge on aggravated assault— causing serious bodily injury, a result-oriented offense.  *See id.*  Furthermore, a person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed.  TEX. PENAL CODE ANN. § 6.04(b)(1) (Vernon 2003); *cf. Ferrel,* 55

S.W.3d at 590-91.

Returning to the evidence and its sufficiency as to Fancher's culpable mental state (*mens rea*), Fancher admitted that he hit Daniels on the side of the head. (Fancher does not dispute on appeal that his punch caused Daniels to fall to the floor and that the result of Daniels's fall was serious bodily injury.) Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Intent to cause bodily injury can be reasonably inferred from Fancher's act of striking Daniels in the head. *See, e.g., Dobbins v. State,* 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd, untimely filed) (jury may infer existence of culpable mental state from any facts tending to prove its existence, including acts, words, and conduct of accused) (citing *Hart v. State,* 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)). It is also consistent with his defensive theory of self-defense, which the jury rejected. Therefore, viewing the evidence in the light most favorable to the verdict, we find a rational jury could have found that Fancher intentionally, knowingly, or recklessly caused bodily injury by striking Daniels, which caused serious bodily injury. We overrule issue two.

### Charge Error

Fancher's first issue complains about error in the charge's application paragraph. In analyzing a jury-charge issue, we first decide whether error exists. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The application paragraph provided:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 5th day of June, 2005, the defendant, Louis Sherley Fancher, did then and there *intentionally, knowingly, or recklessly strike the*

*said Billy Daniels*, and caused serious bodily injury to Billy Daniels, as alleged in the indictment, then you will find the defendant guilty of Aggravated Assault as charged in the indictment.

[Emphasis added.]

Fancher contends:

The jury charge question in fact does not allege any crime, because it is not illegal to intentionally, knowingly, or recklessly strike someone. Furthermore, the charge question doesn't come close to tracking the Indictment. Thus Appellant was convicted of an unindicted non-crime.

Fancher also asserts that the application paragraph failed to track the indictment, which alleged a heightened culpable mental state, and lessened the State's burden of proof because it is "conduct-oriented" while the offense and the indictment are "result-oriented."

Fancher did not object to the charge. The State concedes that the application paragraph is erroneous. Based on the language of the above-discussed assault statutes and case law, we agree that the application paragraph is erroneous. Because Fancher did not object, we analyze this error under the familiar *Almanza* standard. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Olivas v. State*, 202 S.W.3d 137, 143-44 (Tex. Crim. App. 2006) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)). Unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the final arguments of the parties; and (4) any other relevant information revealed by the record

of the trial as a whole. *Olivas*, 202 S.W.3d at 144. Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

*The Entire Jury Charge*

Other than the erroneous application paragraph, the jury charge correctly states the law. Assault, aggravated assault, and the three applicable result-oriented culpable mental states are correctly defined in the charge's abstract portion. But as Fancher points out, the application paragraph asked the wrong question, and it did so in a way that was the easiest for the State to get a conviction because Fancher testified and admitted striking Daniels. We cannot say that the jury charge, taken as a whole, ameliorates the error in the application paragraph. *See Samaripas v. State*, No. 10-09-00044-CR, 2010 WL 376949, at *5 (Tex. App.—Waco Feb. 3, 2010, pet. ref'd) (mem. op., not designated for publication).

*The State of the Evidence*

As we have noted, Fancher admitted striking Daniels, and we agree with him that the erroneous application paragraph thus lessened the State's burden of proof. Otherwise, a good part of the evidence concerned Daniels's preexisting condition and medical testimony about Daniels's injury. Fancher highlights that there was no evidence that he knew of Daniels's preexisting spinal cord injury. While we found above that the evidence is sufficient under a hypothetically correct charge, we conclude that the application paragraph's lessening of the State's burden of proof nevertheless

affects the very basis of the case by calling into question the jury's verdict on the erroneous application paragraph.

*Final Arguments*

Fancher contends that the prosecutor exacerbated the charge error by emphasizing several times that the State had proved a culpable mental state by Fancher's admission that he intentionally hit Daniels. Particularly troubling is the following excerpt made while arguing that the State had proved all five elements of the offense:

> And three and four, I'm going to talk about together, that he *intentionally, knowingly or recklessly caused bodily injury to Billy*. Um, the defendant admits this, too. Think about what the defendant said when he testified yesterday. *He admitted to punching Billy. Now, that's intentional. He admitted to intentionally punching him.* And, uh, I think his exact words were, "That's when I hooked him with a left." So you have all that. They having agreed to one, two, three, and four. Those are not in question. That it was June 5th, '05. It was this defendant, Louis Fancher, that *he intentionally hit Billy Daniels*. [Emphases added.]

In this one excerpt, the prosecutor, after having correctly stated the law, twice conflates the correct result-oriented elements of assault with the application paragraph's erroneous conduct-oriented statement. Furthermore, the prosecutor used an analogy that was also conduct-oriented; it involved a person who had just had knee surgery (a preexisting condition), was wearing pants that hid the preexisting condition, and was kicked in the knee. The prosecutor again conflated the correct (result-oriented) with the incorrect (conduct-oriented):

> Remember, we talked about the person doesn't have to intend to cause a serious bodily injury. If he intended to kick him in the knee and serious bodily injury is what happened, he's guilty of aggravated assault.

The State agrees that this was done but also notes various correct statements of the law by the prosecutor in final argument.

*Relevant Information from the Entire Trial*

Neither party points to any other relevant information from the entire trial.

**Conclusion**

Based on the record as a whole, we find that the erroneous application paragraph deprived Fancher of a valuable right, which was a jury finding on the correct elements of the offense for which he was ultimately convicted. *See Samaripas,* 2010 WL 376949, at *6 (citing *Sanchez*, 209 S.W.3d at 125). We also conclude that the error affected the very basis of the case because it transformed a result-oriented offense into a conduct-oriented offense. We sustain issue one.

We find that Fancher was egregiously harmed by the erroneous application paragraph. We therefore reverse the judgment of conviction and remand the case for a new trial. *See Samaripas,* 2010 WL 376949, at *7.

REX D. DAVIS
Justice

Before Chief Justice Gray
        and Justice Davis[3]
Reversed and remanded
Opinion delivered and filed March 30, 2011
Do not publish
[CR25]

---

[3] The Honorable Felipe Reyna, a former justice on this court, was on the panel and present for argument, but having left office on December 31, 2010, he did not participate in this decision. *See* TEX. R. APP. P. 41.1(c).